IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PETER HOOD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 04-CV-3141 |
| v. | ) |
| DRYVIT SYSTEMS, INC., | ) HONORABLE DAVID H. COAR |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Peter Hood ("Plaintiff") is suing Defendant Dryvit Systems, Inc. ("Dryvit" or "Defendant") for consumer fraud and misrepresentation. Before this court is Defendant's motion for summary judgment in its favor and motion to strike three exhibits submitted with Plaintiff's brief in opposition to summary judgment. For the following reasons, Defendant's motion to strike is DENIED. Defendant's motion for summary judgment is GRANTED.

**I.  LEGAL STANDARD**

It is within the discretion of the court to grant or deny a motion to strike the exhibits offered in support of or in opposition to a motion. See Stinnett v. Iron Works Gym/Executive Health SPA, Inc., 301 F.3d 610, 613 (7th Cir. 2002).

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a

matter of law." Fed. R. Civ. P. 56(c). A genuine issue of material fact exists only if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). When reviewing a motion for summary judgment, the court must view the facts in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. See Schuster v. Lucent Technologies, Inc., 327 F.3d 569, 573 (7th Cir. 2003).

The movant bears the burden of establishing that no genuine issue of material fact exists. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the movant meets this burden, the non-movant must set forth specific facts demonstrating that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); Celotex, 477 U.S. at 324. To successfully oppose the motion, the non-movant must designate these facts in affidavits, depositions, answers to interrogatories, or admissions; the non-movant cannot rest on the pleadings alone. Celotex, 477 U.S. at 324. "A scintilla of evidence in support of the non-movant's position is insufficient," Anderson, 477 U.S. at 252, and the non-movant "must do more than simply show that there is some metaphysical doubt as to the material fact." Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Weighing evidence, determining credibility, and drawing reasonable inferences are jury functions, not those of a judge deciding a motion for summary judgment. Anderson, 477 U.S. at 255.

## II. FACTS[1]

Plaintiff owns a home in Oak Park, Illinois. Defendant is a Rhode Island corporation doing business in Illinois.

In 1993, Plaintiff contacted Forest Park Stucco to discuss the application of stucco to his home. After much discussion, Forest Park Stucco persuaded Plaintiff to apply the Dryvit Weatherlast Elastomeric finish coat ("Weatherlast coating" or "coating"), designed and manufactured by Defendant. The only Dryvit materials Plaintiff saw prior to his purchase of the coating in 1993 were a color sheet and a product sheet. Plaintiff had not seen or heard any newspaper, radio, or television advertisements for the product and had not spoken in person or via telephone with anyone from Dryvit about the product.

Plaintiff's Complaint alleges that, years after the application of Weatherlast coating, serious structural damage occurred and rust stains developed on the studs[2] and surface of his home. This happened, according to Plaintiff, because the Weatherlast coating allowed water to penetrate the exterior of the house. Thus, the two-count Complaint charges Defendant with violation of the Illinois Consumer Fraud Act, 815 Ill. Comp. Stat. 505/2 (2005), and common law fraud. Specifically, the Complaint alleges that two representations made by Defendant in marketing and promoting the Weatherlast coating defrauded Plaintiff: (1) that the Weatherlast

---

[1] Unless otherwise stated, the following facts are undisputed and are taken from the parties' Local Rule 56.1 materials.

[2] The Complaint alleges the Weatherlast coat caused "rot and rust" to studs on Plaintiff's home. (Am. Compl. ¶ 8; emphasis added.) However, Defendant's statement of material facts notes that Plaintiff admitted in answers to interrogatories that there was no sign of *rot* to the studs. (Def.'s Statement of Material Facts ¶ 4.) Plaintiff does not dispute Defendant on this point. (Pl.'s Resp. to Movant's Statement of Material Facts ¶ 4.)

coating was "an efficient and economical protective coating for stucco" and (2) that the Weatherlast coating was "impenetrable by water." (Def.'s Statement of Material Facts ¶ 5; Am. Compl. ¶¶ 5,6.)

### III. DISCUSSION

#### A. Defendant's Motion to Strike

In response to Defendant's motion for summary judgment, Plaintiff filed a brief in opposition that references four exhibits. Defendant has moved to strike three of these exhibits, and all references to them in Plaintiff's Memorandum Brief in Opposition, because of Plaintiff's alleged failure to support these exhibits by affidavits or to otherwise authenticate them. See Powers v. Dole, 782 F.2d 689, 696 (7th Cir. 1986) ("On a summary judgment motion, when a party seeks to offer evidence through exhibits, they must be identified by affidavit or otherwise be admissible."). The three exhibits are: (1) Exhibit 2, an information sheet about "Weatherlastic Smooth" coating posted on Defendant's website; (2) Exhibit 3, a series of correspondence between Defendant and different entities, along with a series of test results with no introduction, explanations, or conclusions; and (3) Exhibit 4, an information sheet about four Weatherlastic finishes (excluding "Weatherlastic Smooth") posted on Defendant's website.

##### 1. Exhibits 2 and 4

The Court will not strike Exhibits 2 and 4. These exhibits are supported by an affidavit, albeit filed ten days after the exhibits were filed, from Plaintiff's counsel stating that he "retrieved [the documents] off the Dryvit, Inc. corporate website on August 29, 2005."

(McBride Aff. ¶ 2.) Counsel also swears that "[t]he web addresses stamped at the bottom of each exhibit were the addresses I retrieved the exhibits from, respectively." (Id.) The affidavit complies with Federal Rule of Civil Procedure 56(e), which requires that affidavits "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that affiant is competent to testify to the matters stated therein." Fed. R. Civ. P. 56(e).

Furthermore, the affidavit sufficiently authenticates the exhibits. In deciding a summary judgment motion, this Court may consider any material that would be admissible or usable at trial. Smith v. City of Chicago, 242 F.3d 737, 741 (7th Cir. 2001). Authentication, a prerequisite for admissibility, "is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Fed. R. Evid. 901(a). Accordingly, the Seventh Circuit has held, "Rule 901 [of the Federal Rules of Evidence] requires only a prima facie showing of genuineness and leaves it to the jury to decide the true authenticity and probative value of the evidence." United States v. Harvey, 117 F.3d 1044, 1049 (7th Cir. 1997). Plaintiff's counsel has made a prima facie showing that Exhibits 2 and 4 are what Plaintiff claims them to be (information sheets posted on Defendant's website). In response, Defendant has not denied that the exhibits represent the contents of its website or argued that its own website is unreliable. Thus, the affidavit is sufficient evidence, at this stage, that the exhibits are indeed information sheets retrieved from Defendant's website.

Finally, the Court cannot strike the exhibits on the ground that they would not be admissible at trial because they are irrelevant or invite confusion.[3] The Seventh Circuit has held that, in some instances, it is best to wait until trial rather than exclude evidence at the summary judgment stage. Adams v. Ameritech Services, Inc., 231 F.3d 414, 428 (7th Cir. 2000) ("[W]hile it is not unheard of to exclude evidence under [Federal] Rule [of Evidence] 403 at the summary judgment stage, normally the balancing process contemplated by that rule is best undertaken at the trial itself.") (internal citation omitted). See also Corley v. Life & Casualty Insurance Company of Tennessee, 296 F.2d 449, 450 (D.C. Cir. 1961) (noting that it is not always possible to determine whether evidence submitted under Rule 56(e) would be admissible because admissibility sometimes depends upon the form in which it is offered, the background which is laid for it, and other factors). Under these circumstances, the Court finds that the affidavit by Plaintiff's counsel is sufficient to properly authenticate Exhibits 2 and 4.

### 2. Exhibit 3

The Court will not strike Plaintiff's Group Exhibit 3. According to Plaintiff, Defendant supplied the documents labeled as Exhibit 3 during discovery as a supplemental answer to Plaintiff's Request to Produce #12. (McBride Aff. ¶ 3.) Since "the very act of production [i]s implicit authentication," Exhibit 3 has been authenticated and the Court may consider it in deciding the summary judgment motion. United States v. Brown, 688 F.2d 1112, 1116 (7th Cir.

---

[3] There *is* a relevancy issue with Exhibits 2 and 4. Defendant argues that the information sheets were not in existence prior to Plaintiff's purchase of Weatherlast coating in 1993. Furthermore, Plaintiff admits that he did not rely on Exhibits 2 and 4 in purchasing the coating. This issue, however, is addressed in the Court's discussion of the Defendant's motion for summary judgment.

1982).  As the Seventh Circuit noted in Brown, "[a]uthentication relates only to whether the documents originated from [its alleged source]; it is not synonymous to vouching for the accuracy of the information contained in those records."  See also Fenje v. Feld, 301 F. Supp. 2d 781, 809 (N.D. Ill. 2003) ("Documents produced by an opponent during discovery may be treated as authentic."); South Central Bank and Trust v. Citicorp Credit Services, 863 F. Supp. 635, 646 (N.D. Ill.1994) ("[T]he court finds that the fact that [Defendant] produced the draft letter suffices to authenticate the letter. . . .").  The case on which Defendant relies for the proposition that the Court may not consider papers unsupported by affidavit or otherwise authenticated is distinguishable.  That case, Martz v. Union Labor Life Insurance Co., 757 F.2d 135 (7th Cir. 1985), does not involve documents produced by opposing counsel during discovery.  Defendant's motion to strike Exhibit 3, as well as Exhibits 2 and 4, is denied.

### B. Defendant's Motion for Summary Judgment

Defendant moves for summary judgment on three grounds: (1) There are no facts to support misrepresentation; (2) There are no facts to suggest scienter, an element of any fraud action; and (3) Plaintiff's claim under the Illinois Consumer Fraud Act is time barred under the statute's three-year statute of limitations.

The elements of misrepresentation, or common law fraud, are: (1) a false statement of material fact; (2) defendant's knowledge that the statement was false; (3) defendant's intent that the statement induce the plaintiff to act; (4) plaintiff's reliance upon the truth of the statement; and (5) plaintiff's damages resulting from reliance on the statement.  Connick v. Suzuki Motor Co., Ltd., 675 N.E.2d 584, 591 (Ill.1996).  "A successful common law fraud complaint must

allege, with specificity and particularity, facts from which fraud is the necessary or probable inference, including what misrepresentations were made, when they were made, who made the misrepresentations and to whom they were made." Id.

The elements of a claim under the Illinois Consumer Fraud Act are: (1) a deceptive act or practice by defendant; (2) defendant's intent that plaintiff rely on the deception; and (3) the deception occurred in the course of conduct involving trade and commerce. Id. at 593. "[A] complaint alleging a violation of consumer fraud must be pled with the same particularity and specificity as that required under common law fraud." Id.

### 1. False Statement or Deceptive Act

There is no genuine dispute as to whether, as alleged in the Complaint, Defendant (a) made the false statement that the Weatherlast coating was "an efficient and economical protective coating for stucco" and "impenetrable by water," or (b) deceptively marketed the coating as such. (Compl. ¶¶ 5,6.) Plaintiff has offered no facts that would support these allegations. Plaintiff testified that he did not speak to anyone from Dryvit or hear or see a Dryvit advertisement in the media prior to purchasing the Weatherlast coating. The only Dryvit materials Plaintiff reviewed prior to purchase were a color sheet and a product sheet. Both sheets are included in Defendant's LR 56.1(a)(1) Compendium of Documents in Support of Summary Judgment, and neither sheet states that the Weatherlast coating is "efficient and economical" or "impenetrable by water." (Def.'s LR 56.1(a)(1) Comp. of Docs., Ex. G, at 2, 3.)

Plaintiff's subsequent attempt to demonstrate a dispute about this issue is unavailing. In response to the Defendant's Statement of Material Facts, Plaintiff contends[4] that the "general allegation [of Defendant's misrepresentations in the Complaint] also consumes more detailed allegations that the Weatherlast coating was protective, water repellant, weather resistant, and virtually maintenance free." (Pl.'s Resp. to Movant's Statement of Material Facts ¶ 5.) Plaintiff argues that Defendant "attempts to narrow the focus by specifically referring to the terms of 'efficient and economical' contained in the Complaint. This improperly narrows the scope of Dryvit's representations concerning the product." (Pl.'s Mem. Br. in Opp'n to Def.'s Mot. for Summ. J. at 9.) The heightened pleading requirement for fraud under the Federal Rules of Civil Procedure, however, is clear: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). A claim of fraud in *each and every* complaint must include "'particularity' about the details-'the who, what, when, where, and how: the first paragraph of any newspaper story.'" Hemenway v. Peabody Coal Co., 159 F.3d 255, 261 (7th Cr. 1998) (internal citation omitted). Nowhere does Plaintiff's *Complaint* state that the alleged misrepresentations over which he is suing include statements that Weatherlast was a "protective and decorative coat over stucco," "water repellant," and "designed to be maintenance free."[5] These statements are alleged in Plaintiff's Brief in

---

[4] The opposing party's Response to the Movant's Statement of Material Facts (otherwise known as the LR 56.1(b)(3) Statement) should not, the Court notes, contain argument. This Court refers Plaintiff to the Court's Standing Order Regarding Motions for Summary Judgment which states: "Do **not** include argument in the form of inferences in the statement of uncontested material facts or in the statement of contested material facts." The emphasis is in the original quotation.

[5] It would make sense for the Complaint to identify these phrases because the product sheet Plaintiff saw prior to purchase *does* make these claims about the Weatherlast Elastomeric

Opposition to Summary Judgment, but that brief is an insufficient means by which to satisfy the requirement of Rule 9(b). Fraud must be alleged with particularly in the *pleadings*; that is, a complaint, answer, reply to a counterclaim, or answer to a cross-claim. Anything else, including Plaintiff's Brief in Opposition, is merely a motion or paper. See Perry v. Sullivan, 207 F.3d 379, 382 (7th Cir. 2000) (noting that the Federal Rules of Civil Procedure distinguish between "pleadings" and "motions and other papers"). In sum, Plaintiff cannot rely on his opposition brief to add specificity to allegations in the Complaint which should have been pled with particularity at the outset and which, even after discovery, the facts do not support.

Plaintiff also argues that an exhibit submitted with his Brief in Opposition demonstrates a material dispute as to whether Defendant fraudulently marketed the Weatherlast coating as "impenetrable by water." The exhibit, labeled Plaintiff's Group Exhibit 2, is an undated information sheet posted on Defendant's website. The sheet states that a product called Weatherlastic Smooth is a "waterproof, decorative coating." (Pl.'s Mem. Br. in Opp'n to Def.'s Mot. for Summ. J., Ex. 2, at 1.) This exhibit, however, does not create a factual dispute for several reasons. First, Plaintiff testified that he did not rely on this information sheet in purchasing the Weatherlast coating; he relied only on the color sheet and product sheet previously referenced. Second, according to an affidavit by Defendant's principal chemist, the information sheet did not even exist at the time Plaintiff purchased his Weatherlast coating. Defendant developed and distributed Plaintiff's Group Exhibit 2 in 1994, a year after Plaintiff's purchase. Similarly, the affidavit establishes that none of the product sheets in effect before April 1994 identified any of the Weatherlast or Weatherlastic products as waterproof finishes.

---

finish coat.

Thus, it is impossible for any misrepresentation contained in Plaintiff's Group Exhibit 2 to have proximately caused Plaintiff's injuries. See Connick, 675 N.E.2d at 594 ("[P]laintiffs can state a valid claim of consumer fraud [under the Illinois Consumer Fraud Act] only where premised upon statements made prior to their dates of purchase.") (internal citation omitted). Third, Plaintiff never alleges in the Complaint, as he must with fraud, that the fraudulent claim was made with regard to a product called "Weatherlastic Smooth." The Complaint refers only to a product called "Weatherlast Elastomeric" and does not allege any confusion about the product in question. Plaintiff's Group Exhibit 2 does not create a dispute in fact.

Plaintiff's final attempt to demonstrate a factual dispute about Defendant's misrepresentations and deceptive trade practices is also unsuccessful. Plaintiff testified that the man who applied the stucco to his home, Joe Zerbinski of Forest Park Stucco, told him that a finish coat is a "water barrier." (Def.'s LR 56.1(a)(1) Comp. of Docs., Ex. B, at 9.) Zerbinski testified that "water repellant," the adjective used to describe Weatherlast coating on the product sheet Zerbinski gave to Plaintiff, means "water shedding." (Def.'s LR 56.1(a)(1) Comp. of Docs., Ex. E, at 36:8-24.) Not only were the statements not alleged in the Complaint, neither statement establishes a dispute as to Defendant's misrepresentations and deceptive trade practices since neither can be attributed to Defendant. The Illinois Supreme Court held in Connick, 675 N.E.2d at 592, that "[a] complaint relying on agency must plead facts which, if proved, could establish the existence of an agency relationship." "It is insufficient to merely plead the legal conclusion of agency." Id. Plaintiff has not plead or established by affidavit or otherwise facts that establish Zerbinski as Defendant's agent authorized to speak on Defendant's behalf. To the contrary, as Defendant has noted, the facts uncovered during discovery

demonstrate that (1) Dryvit was not listed as an officer or director of Forest Park Stucco; (2) Dryvit was not considered an employee of Forest Park Stucco; and (3) Dryvit was not onsite at any time during Zerbinski's work on Plaintiff's home. (Def.'s LR 56.1(a)(1) Comp. of Docs., Ex. E, at 99:5-24.) Zerbinski's testimony and Plaintiff's testimony about his discussions with Zerbinski, therefore, do not create a material dispute in fact about Defendant's alleged misrepresentations and deceptive trade practices.

In sum, Plaintiff has designated no facts in the pleadings, depositions, answers to interrogatories, or affidavits that **establish a genuine issue for trial as to whether Defendant made the false statement or engaged in the deceptive marking alleged in the Complaint.**

### 2. Scienter

In addition to a false statement of material fact, a common law fraud claim requires an intent to deceive, manipulate, or defraud, otherwise known as scienter. See Michaels v. Michaels, 767 F.2d 1185, 1199 (7th Cir. 1985); Connick, 675 N.E.2d at 591. There is no genuine dispute of fact as to whether, as alleged in the Complaint, Defendant knew any statement it made with regard to the Weatherlast coating was false and intended to deceive Plaintiff accordingly.

Defendant's answers to Plaintiff's interrogatories demonstrate that Defendant did not at the time of Plaintiff's purchase and does not today know of a defect in its Weatherlast coating. An affidavit by the manager of Defendant's Warranty Department established that the Department never received any customer complaints about the Weatherlast coating and that no legal complaints, other than the instant litigation, have been filed in relation to the Weatherlast

coating.  Zerbinski testified that he had applied the Weatherlast coating to stucco on hundreds of homes and had not heard any reports of problems with the coating.  Hence, as Defendant argued in its Motion for Summary Judgment, no smoking guns have been uncovered:  The "discovery process did not uncover any pre-purchase laboratory analyses, test results, third party reports, internal Dryvit memoranda or Dryvit testimony to suggest that Dryvit had notice or knowledge of a defect in its Weatherlast Elastomeric coating product."  (Def.'s Mem. of Law in Supp. of Its Mot. for Summ. J. at 5.)

Plaintiff offers Plaintiff's Group Exhibit 3, a series of correspondence between Defendant and different entities, along with a series of undated and unexplained test results, in the effort to demonstrate a dispute in fact about Defendant's knowledge and intent to deceive.  Plaintiff interprets the test results to mean that a product called "Weatherlast QP" would crack at 40 degrees Fahrenheit (thereby letting in water that would cause damage) and that the Weatherlast product does create reddish brown staining, streaking, yellowing, and darkening.  According to Plaintiff, "[s]ince the undated testing document shows [the failure of the Weatherlast product] could have been prior to 1993, a genuine issue of material fact exists with regards to Dryvit's knowledge of Weatherlast's failure to be water repellant, weather resistant, and virtually maintenance free."  (Pl.'s Mem. Br. in Opp'n to Def.'s Mot. for Summ. J. at 8.)  Plaintiff's attempt fails for several reasons.  First, Plaintiff never alleged that his home was coated with "Weatherlast QP," the finish that the test results purportedly reveal as defective.  To the contrary, the Plaintiff's Complaint alleges that he purchased the "Weatherlast Elastomeric" finish coat and his Brief in Opposition states that the "Weatherlast Smooth" coat has been fraudulently marketed as waterproof.  Second, Plaintiff has presented no facts in the pleadings, affidavits, depositions,

-13-

or answers to interrogatories that would allow the Court to draw a reasonable inference in Plaintiff's favor about the test results. The test results themselves, as Defendant notes, contain no introductions, explanations, or conclusions. Plaintiff has not provided the testimony or affidavits of anyone with personal or expert knowledge of the tests to establish that the results show Defendant knew or should have known about a defect in its Weatherlast coating. Defendant, by contrast, has submitted an affidavit from its engineering department explaining that the tests produced results acceptable under industry standards and that product sheets in effect at the time of Plaintiff's purchase noted this fact.

Plaintiff recognizes the paucity of evidence he has supplied at the summary judgment phases and attributes this to the fact that "Dryvit has produced no testing for the Weatherlast Smooth System, nor testing of any Weatherlast product prior to the date of application." (Pl.'s Mem. Br. in Opp'n to Def.'s Mot. for Summ. J. at 8.) Rule 9(b), however, is designed to insure that litigants have *some* factual basis, even if they do not have *all* of the facts, *before* proceeding with a fraud claim. The rule, as interpreted by the Seventh Circuit, is forgiving: Plaintiffs need not plead facts to which they lack access prior to discovery, Katz v. Household International, Inc., 91 F.3d 1036, 1040 (7th Cir. 1996), and plaintiffs cannot be faulted for failing to plead with particularity in their complaint a fraud that they first learn of, with all due diligence, in pretrial discovery, Ash v. Wallenmeyer, 879 F.2d 272, 274 (7th Cir. 1989). But not even the facts to which Plaintiff had access before discovery (e.g., the product sheet, advertisements by Dryvit) support his allegations. Moreover, after discovery, Plaintiff has not uncovered additional facts that suggest Defendant has other, hidden evidence that might support his claims or allow an inference in Plaintiff's favor about his claims.

### 3. Time Bar

As Plaintiff has not met his burden of establishing a genuine issue for trial with regard to the first two elements of his Illinois Consumer Fraud Act and common law fraud claims, the Court need not consider Defendant's third ground for summary judgment in its favor. The Court need not determine whether Plaintiff's Illinois Consumer Fraud Act count is time-barred.

## IV. CONCLUSION

For the foregoing reasons, Defendant's motion to strike is DENIED and Defendant's motion for summary judgment is GRANTED. This case is closed.

Enter:

/s/ David H. Coar
David H. Coar
United States District Judge

Dated: **November 8, 2005**